***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of Deputy Commissioner Rowell and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee. *Page 2 
3. The carrier liable on the risk is correctly named.
4. The employee's average weekly wage will be determined from an Industrial Commission Form 22 Wage Chart to be provided by the Defendant with supporting wage documentation.
5. The parties stipulated into evidence as Stipulated Exhibit No. 1, Pre-Trial Agreement, as amended and initialed by the parties.
6. The parties stipulated into evidence as Stipulated Exhibit No. 2, Medical Records.
7. The parties stipulated into evidence as Stipulated Exhibit No. 3, Industrial Commission Forms.
8. The parties stipulated into evidence as Stipulated Exhibit No. 4, Discovery documentation.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner Plaintiff was 40 years old. Plaintiff graduated high school and is pursuing a two year associate degree in criminal justice and forensic science.
2. Plaintiff's work history prior to becoming employed with the Defendant-Employer consisted of working with New Hanover Regional Medical Center as a Support Associate III, and with the North Carolina Department of Revenue.
3. Plaintiff initially became employed with Defendant-Employer, New Hanover County Schools, in 2005. Plaintiff was hired as a substitute bus driver. She was later transferred *Page 3 
to the Exceptional Children Department as a permanent bus driver. This transfer occurred in August 2006.
4. Plaintiff normally worked Monday through Thursday for Defendant-Employer. Prior to the transfer to the Exceptional Children's Division she was required to take additional training with regards to how to care for the children assigned to her and the paperwork required in this division.
5. Mr. Brian Akins, Coordinator of the Exceptional Children's Division, described the typical requirements of a bus driver in the Exceptional Children's Division as being required to drive the bus, making sure the children get to school and home safely, maintaining discipline on the bus, taking wheelchairs on and off the bus, and placing children in "star-seats" with the proper restraints. There is also paperwork required to be completed with regards to the transport of the children and their destinations.
6. Plaintiff began treating with Dr. Huffmon at Atlantic Neurosurgical and Spine Specialists in September 2007 for left forearm, hand, and neck pain. Plaintiff underwent an anterior cervical fusion on September 10, 2007. This surgery was performed by Dr. Huffmon. Dr. Huffmon wrote Plaintiff out of work after her surgery. The surgery alleviated the pain that she was experiencing prior to her surgery.
7. On October 2, 2007, Dr. Huffmon released Plaintiff to return to work with restrictions of four hour shifts, no prolonged standing or sitting. Plaintiff returned to work in a bus monitor position. Mr. Akins assigned Plaintiff to Bus 383 because there were no students in wheelchairs and stooping or bending were not be required on that bus.
8. Plaintiff alleged that on October 18, 2007 she felt a slight pull in the neck area when she was helping a student get off the school bus. Plaintiff did not complete a Form 18 until *Page 4 
October 26, 2007. On November 9, 2007, Plaintiff gave a recorded statement to Ashley Pruitt, adjustor with Key Risk Management Services. Plaintiff stated that she was assisting Joshua McGhee off the bus and he fell. Plaintiff alleged she attempted to break his fall and felt a pull on the left side of her neck.
9. On January 31, 2008, the Defendant filed a Form 61 denying that Plaintiff had an injury by accident or specific traumatic incident and that Plaintiff's condition did not arise out of and in the course and scope of employment with Defendant. Defendant also denied that Plaintiff sustained an exacerbation of her cervical condition.
10. In response to discovery from Defendant, Plaintiff indicated that Joshua McGhee had fallen on her, but she had subsequently learned through her attorney that his name was Joshua Nixon, and not Joshua McGhee. Plaintiff indicated that the bus driver was watching her in the rear-view mirror, but he did not get up to come and help. Plaintiff stated that Joshua could not pull himself up due to the position of his legs and arm braces.
11. At the hearing before the deputy commissioner, Plaintiff testified that on October 18, 2007, a student on the bus, Joshua Nixon, had polio and a broken leg and was getting off the bus. Plaintiff alleges that she stood behind Mr. Nixon's seat and that as he moved into the aisle, Mr. Nixon fell into Plaintiff's outstretched arms. Plaintiff stated that Mr. Nixon fell all the way to the floor. Plaintiff also stated that Joshua Nixon is a neighbor of hers.
12. Brian Akins, Plaintiff's supervisor, stated that on October 18, 2007, he had placed Plaintiff on Bus 383 because no lifting was required while working as a monitor on that bus. Mr. Akins also testified that Arnold Dixon was the bus driver of Bus 383 on October 18, 2007 and not Angela Thomas. Mr. Akins stated that the bus driver and monitor are responsible for completing daily sheets to indicate any incident that happened on the bus on a given day. There *Page 5 
was no indication on the daily sheet for Bus 383 for October 18, 2007 that Mr. Nixon had fallen that day, nor any indication of an injury to Plaintiff. Mr. Akins first learned that Plaintiff was claiming an injury from Juanita Taylor.
13. Juanita Taylor stated that on October 18, 2007, Plaintiff presented to her and stated that she "hurt her shoulder picking up a kid." Ms. Taylor offered Plaintiff medical treatment and Plaintiff declined. Plaintiff did not tell Ms. Taylor that a child had fallen on her, nor that she had injured her neck.
14. Arnold Dixon has worked with special needs children during his employment with New Hanover County Schools for twenty-five years. Mr. Dixon has been an Exceptional Children's bus driver for three years. Mr. Dixon remembered October 18, 2007, because it was the only occasion Plaintiff had ever monitored while he was driving the bus. Mr. Dixon stated that he was not aware that Joshua Nixon had polio, nor did he recall him having a broken leg, because Mr. Nixon was not wearing a cast. Mr. Dixon stated that Joshua sits in the second seat behind the driver. Joshua is able to get on and off the bus by himself using the bus rails and the seat-backs. He does not use his crutches to board the bus because the bus aisle is too narrow. Mr. Dixon stated that the aisle is so narrow that one must turn sideways to walk down it. When Joshua gets off the bus, he hands his book bag and crutches to the monitor or bus driver who gives them to whomever is meeting Joshua. Joshua turns sideways and walks up the aisle using the seat-backs to exit the bus. Mr. Dixon stated that on October 18, 2007, Joshua did not fall. If that had occurred, Mr. Dixon would have gotten up to have helped him. Mr. Dixon also would have made sure this was indicated on the incident report in case Joshua had been injured. Mr. Dixon did not recall Plaintiff telling him that she had injured her neck while riding the bus on October 18, 2007. *Page 6 
15. On October 22, 2007, Plaintiff presented to New Hanover Regional Medical Center. She reported a headache for one day, numbness in her left arm, pain in her left forearm, and neck stiffness. Plaintiff left the emergency department prior to being seen by a physician. Plaintiff did not claim that she was injured while at work.
16. Plaintiff returned to New Hanover Regional Medical Center on October 24, 2007 and reported pain in the neck and left forearm. She did not mention being injured while at work. The Emergency Physician Record indicates that Plaintiff did not have a recent injury.
17. On October 25, 2007, Plaintiff presented to Dr. Huffmon and reported that she had been riding on the school bus as a monitor. She indicated she had reached to pick up a child who had fallen and had an increase in her pain. Dr. Huffmon increased the amount of weight Plaintiff was allowed to lift to 40 pounds, but restricted Plaintiff from riding on the school bus. X-rays of the cervical spine revealed a solid fusion at C5 through C7. Plaintiff returned to Dr. Huffmon on December 4, 2007 with continued headaches in the back of her neck. X-rays of the cervical spine revealed a solid fusion at C5 through C7. An MRI of the cervical spine on December 18, 2007 was unremarkable and showed no residual or recurrent disc herniation.
18. On December 20, 2007, Plaintiff returned to Dr. Huffmon with complaints of right-sided neck pain and right forearm pain. She was referred to a pain clinic.
19. On December 31, 2007, Plaintiff saw Dr. Frank Crowl at Atlantic Pain Management. Plaintiff indicated to Dr. Crowl that she had injured her neck between July 27, 2007 and August 5, 2007. She also completed a form indicating she was not involved in litigation. However, at the hearing, Plaintiff admitted that she was pursuing a claim against a chiropractor.
20. On January 10, 2008, Dr. Crowl wrote to Dr. Huffmon regarding his consultation *Page 7 
with Plaintiff. The letter details Plaintiff's history, but does not indicate that Plaintiff injured her neck while lifting a student on October 18, 2007. Dr. Crowl's impression was chronic neck pain, left arm and shoulder pain, and possible left cervical radiculopathy. He noted that her symptoms did not seem to be incapacitating and recommended physical therapy.
21. On January 15, 2008, Dr. Crowl saw Plaintiff in follow up. He noted that Plaintiff described intermittent pain that appeared to be relatively minimal. Plaintiff focused on her left neck and shoulder pain, which seemed to be moderate at best. Dr. Crowl indicated he was uncertain why Plaintiff was not working, as the injury did not appear to be debilitating. Physical therapy was recommended.
22. On January 25, 2008, Dr. Huffmon wrote a letter to Kenneth Johnson, the attorney who was handling Plaintiff's medical malpractice claim against a chiropractor. Dr. Huffmon noted in the letter that Plaintiff had a permanent partial disability rating to the whole person of 28%. He stated that her prognosis was excellent and that she should heal from her neck surgery. As far as permanent restrictions, he indicated she should avoid roller coasters and repetitive whipping motions of the neck. He felt she should be able to tolerate about any type of job for which she was qualified.
23. On February 1, 2008, Plaintiff saw Dr. Huffmon with complaints of right neck numbness and left shoulder pain. She noted she was feeling better. X-rays of the cervical spine were unremarkable.
24. On February 4, 2008, Plaintiff was seen at New Hanover Regional Medical Center. The record indicates that Plaintiff had neck pain after lifting a child yesterday. A second description of Plaintiff's history indicates she had pain in her left lateral neck after lifting her son yesterday. The emergency physician record indicates that Plaintiff had possibly injured her neck *Page 8 
while lifting yesterday. Plaintiff is the mother of a 13 year old and a one year old.
25. On May 23, 2008, Plaintiff had an EMG of the left upper extremity by Dr. Anna Bettendorf. The study was normal with no evidence of radiculopathy at C5, C6, or C7.
26. On July 17, 2008, Plaintiff saw Dr. Adam Brown at Coastal Neurosurgical Spine Center. Plaintiff complained of continued neck pain with numbness and tingling in her left arm that waxes and wanes. She claimed that her left arm felt weak and that she noticed it more when she tried to lift things, including having a difficult time lifting her child. Dr. Brown's impression was chronic neck pain. He did not recommend further surgical intervention. He ordered a myelogram and post-myelogram CT scan which were unremarkable. There is no mention in Dr. Brown's record of the incident of October 18, 2007.
27. Based upon the greater weight of the credible evidence the Full Commission finds that Plaintiff did not suffer an injury by accident or a specific traumatic incident arising out of and in the course of her employment with Defendant on October 18, 2007.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment. Henry v. Leather Co.,231 N.C. 477, 57 S.E.2d 760 (1950). *Page 9 
2. Plaintiff has failed to prove that she sustained a compensable injury by accident or specific traumatic incident arising out of and in the course of her employment on October 18, 2007. N.C. Gen. Stat. § 97-2(6).
3. As Plaintiff has failed to establish that she sustained a compensable injury by accident, Plaintiff is not entitled to receive disability compensation pursuant to N.C. Gen. Stat. § 97-29 or medical compensation pursuant to N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following award:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Defendants shall bear costs.
This the 26th day of February 2010.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DIANNE C. SELLERS *Page 10 
COMMISSIONER